```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ALABAMA
                           SOUTHERN DIVISION
```

UNITED STATES OF AMERICA,        )
                                 )
    Plaintiff                    )
                                 )    CIVIL ACTION NO.
VS.                              )
                                 )    95-AR-1008-S
CHARLES AUSTIN JOHNSON, ET AL.,  )
                                 )
    Defendants and               )
    Third-party Plaintiffs       )
                                 )
VS.                              )
                                 )
SOUTHTRUST BANK OF ALABAMA,      )
N.A.,                            )
                                 )
    Third-party Defendant        )

**ENTERED**

JAN 8 1997

## MEMORANDUM OPINION

    This is a case in which the United States of America, the proper party to represent the Small Business Administration ("SBA") in this court, sues Charles Austin Johnson ("Charles") and James Tenille Johnson, Jr. ("James"), who were guarantors on a promissory note representing an SBA guaranteed loan made by SouthTrust Bank of Alabama, N.A. ("SouthTrust"), to Valley Avenue Car Wash, Inc. ("Valley"). After Valley defaulted, SouthTrust called upon SBA which paid SouthTrust the amount of SBA's guaranty, at which time SouthTrust assigned its position to SBA, including the note and accompanying guaranty agreements. The United States thereupon sued Charles, James and another guarantor, William Chris Blane ("Blane"), the latter of whom had signed the original SBA form of

guaranty agreement for procuring the Valley loan but who did not sign a separate guaranty agreement at the time the subsequent note here being sued upon was executed by Valley. There is a dispute as to whether this new note constituted a "renewal" of the old note or was an entirely new loan. Charles was the president of Valley at all times pertinent. James was Valley's secretary at all times pertinent. Blane had an interest in Valley at the time of the original SBA commitment and guaranty, but at or about the time of the execution of the note here sued upon, Blane had gotten rid of his interest in Valley. The United States dismissed its action against Blane. Unless reached by deduction, the reasons why the United States dismissed its action against Blane are unknown.

Charles and James defend the action brought by the United States and pursue a third-party action against SouthTrust. They make several contentions: (1) that SBA and SouthTrust violated a contract which required that Blane be and remain a co-guarantor; (2) that SBA and SouthTrust negligently and/or wantonly failed to obtain the required guaranty by Blane contrary to a duty owing to Charles and James; (3) that Blane's guaranty was an unmet precondition to Charles' and James' guaranties, rendering their purported guaranties void; (4) that SBA and SouthTrust committed fraud upon Charles and James by misrepresenting to them as an inducement to their guaranteeing the present note that Blane was still obligated under his original guaranty and/or by withholding

2

from Charles and James the material fact that Blane had not signed a new guaranty agreement.

Although briefs in support of and in opposition to motions for summary judgment are not usually filed with the Clerk, the Clerk is directed to file all such briefs in this case, as well as all evidentiary materials, because the briefs are sufficiently interrelated to require that they be matters of record. The fact that they are in the record for any reader of this opinion will make this opinion shorter and easier to understand than it might otherwise have been.

Both the United States and SouthTrust have filed motions for summary judgment. If the United States is not entitled to recover from Charles and James, their third-party action against SouthTrust becomes moot. Therefore, the court would logically first discuss the defenses of Charles and James to the SBA suit, <u>except</u> that the matters raised by Charles and James in defense of the claim by the United States overlaps or duplicates the matters upon which they rely for "laying off" on SouthTrust any liability they may have to the United States. They do not deny the central facts that SouthTrust made an SBA-guaranteed loan to Valley, thereafter defaulting and leaving an unpaid balance as of December 16, 1996, of $429,062.93 in principal, plus $92,077.60 in accrued interest, with a daily interest accrual thereafter of $82.29.

There are a number of reasons which, alternatively and in the aggregate, make Charles and James liable on their guaranty agreements acquired by SBA from SouthTrust, and reasons which protect SouthTrust from third-party liability. The court will discuss these matters not necessarily in the order of their criticality to the outcome.

### Waiver and Estoppel

Charles and James were the top operating officers of Valley, a corporation that could only comprehend and act through its duly constituted agents, especially its president and its secretary in a major loan transaction. Because of their positions in the corporation, Charles and James were deemed to know everything that Valley knew. When Charles and James participated in Valley's pattern of borrowing from SouthTrust and in spending the sums thus borrowed, eventually without the signature of Blane on the second round of guaranty agreements in favor of SouthTrust, Charles and James gave up any complaint they might otherwise have had about the absence of Blane's guaranty. As corporate officials who actually signed the loan papers for Valley, Charles and James are presumed to know the pertinent details of the corporate transaction and are estopped to complain personally about them. When a person with knowledge of the fact that a precondition to a transaction has not been met, receives, without protest, a benefit from that very same transaction, he ratifies the transaction and waives the defect or

4

precondition.  This scenario perfectly describes Charles and James.

### Statutes of Limitations

If any fraud was committed and/or if any negligent or wanton act occurred, they occurred more than two years before Charles and James filed their third-party action against SouthTrust, and their actions for any such torts are barred by Alabama's two-year statute of limitations.  There is no factual basis for non-accrual or for tolling.  If there was any breach of contract by SouthTrust and/or SBA, the breach occurred more than six years before the action and the third-party action were filed, and any contract claim by Charles and James is barred by the Alabama's six-year statute of limitations.  Charles and James argue that the contract upon which they sue was "under seal," a fact that, if true, would elongate the statute of limitations to ten years.  This court seriously doubts that any writing or writings here constitute a contract or contracts "under seal" as that term is understood in Alabama.  The sealing of a document must be unequivocal.  Nevertheless, the court will proceed for the purpose of analyzing other issues on the assumption that if there was a written contract upon which Charles and James can rely, it was "under seal" and was subject to a ten-year statute of limitations.  Such a ten-year statute of limitations would not have expired.

### Was There Fraud?

The two affidavits submitted by Charles and James in defense of the Rule 56 motion by the United States and in defense of the Rule 56 motion by SouthTrust contain the following identical language:

> 1. Prior to the closing of the SBA Loan made by SouthTrust Bank of Alabama, N.A. ("SouthTrust") of July 15, 1988, Bob Wilkerson, the officer of SouthTrust with whom Valley Avenue Car Wash Inc. was dealing, told me, as president of Valley Avenue Car Wash, Inc., that Vernon LeMay was the attorney who would close the loan. To the best of my knowledge, no officer, director, agent or servant of Valley Avenue Car Wash, Inc. employed or selected Vernon LeMay to represent Valley Avenue Car Wash, Inc. in the SBA Loan transaction of July 15, 1988.
>
> 2. Vernon LeMay never represented Valley Avenue Car Wash, Inc., or myself.
>
> 3. Vernon LeMay was an attorney who was selected by SouthTrust to close the said SBA Loan transaction of July 15, 1988, and Vernon LeMay represented SouthTrust in such action.
>
> 4. Prior to the execution of the loan documents for the SBA Loan made by SouthTrust on July 15, 1988, <u>it was my intention to execute my SBA Form 148 Guaranty to SouthTrust only if each of Joe Williamson, Steve Kirkpatrick, Charles Austin Johnson and William Chris Blane also executed the SBA Form 148 Guaranty in connection with this loan on July 15, 1988</u>. <u>Bob Wilkerson and SouthTrust knew that I intended this</u> as the written Authorization and Loan Agreement was conditioned on each of the abovesaid persons also signing one. I did not agree, and have never intended to agree, to execute by SBA Form 148 Guaranty to SouthTrust if each of Joe Williamson, Steve Kirkpatrick, Charles Austin Johnson and William Chris Blane did not also execute the SBA Form 148 Guaranty on July 15, 1988.
>
> 5. The closing of the SouthTrust SBA loan referenced herein occurred at the Greensprings branch and offices of

6

> SouthTrust and was conducted by Bob Wilkerson of SouthTrust and Vernon LeMay. I relied on these individuals and SouthTrust to close the loan properly and to obtain the executed SBA Form 148 Guaranty to SouthTrust from each of Joe Williamson, Steve Kirkpatrick, Charles Austin Johnson and William Chris Blane.

(emphasis supplied).

These sworn descriptions of what happened do not describe or even parallel the alleged fraud described by Charles and James in their pleadings, namely, that SouthTrust's closing attorney, LeMay, actually represented to them that the signature of Blane on a new, separate guaranty agreement was unnecessary because Blane's earlier guaranty survived and remained viable. In fact, these affidavits simply talk about what was <u>in the minds</u> of Charles and James, not what was actually told them. What they thought, unless induced by the withholding of material information or by an express misstatement of fact, is not relevant. The versions of what happened contained in the affidavits and the versions contained in the pleadings are in irreconcilable conflict. Assuming *arguendo* that Charles and James can be permitted to assert contradictory facts, and further assuming *arguendo* that LeMay told them that Blane's signature was unnecessary, there are at least two reasons why LeMay's said representation does not constitute fraud. First, LeMay was correct in what he said. Second, and equally important, LeMay was simply giving his legal opinion and not asserting a fact. An opinion is not the stuff of which fraud is made.

7

Hypothetically, if LeMay had said to Charles and James: "In *Smith v. First National Bank*, the Supreme Court of Alabama, speaking through Chief Justice Smith, said: 'A loan guaranty, once made, remains enforceable against the guarantor unless and until there is no longer any outstanding debt by the borrower to the lender or until the borrower expressly in writing releases the guarantor's obligation,'" and if this rendition of the holding was a material misquotation of the Supreme Court, such would, of course, be a misstatement of material <u>fact</u>, so that if Charles and James thereafter justifiably relied on it, the mistaken assertion could constitute legal fraud. However, when general principles of law (even with basic factual assumptions) are being expounded by a lawyer, he is simply giving his professional opinion. Sometimes lawyers are correct. Sometimes they are not. But if a lawyer is wrong, he does not automatically commit fraud, that is, unless he deliberately intends to mislead. He might be committing malpractice if he gives his client bad advice. There is nothing in this record, however, to provide a basis upon which a reasonable jury could find that LeMay intended to misstate the law for the purpose of obtaining guaranties from Charles and James that he otherwise would not have been able to obtain. Furthermore, if LeMay actually gave the opinion that he is alleged to have given, this court shares LeMay's opinion. The mere fact that the United States gave up against Blane does not change this court's opinion

on this subject. In this court's view, Blane simply got lucky. The court will not speculate on the motive of the United States for dismissing Blane, but whatever its motive, that dismissal does not constitute an adjudication of non-liability binding on SouthTrust, on Charles or James, or on this court. The overall facts would have in all likelihood rendered Blane liable on his original guaranty. At the very least a jury issue on Blane's liability existed. Perhaps the United States wanted to obviate a jury trial on its claim vis-a-vis Blane. Its strategy, if it had one, has worked.

### Was There a Contract That Can be Invoked by Charles and/or James?

Charles and James say that SBA's original written commitment to Valley expressly required separate guaranties, using SBA's form, by Blane as well as by Charles, James (and other Valley principals who have since declared bankruptcy), and that SBA's commitment constituted a contract subsequently breached by SBA and/or by SouthTrust when they failed to get and maintain the guaranty by Blane. Charles and James have the burden of proving not only that the said commitment constituted a contract but that they were its third-party beneficiaries with standing to invoke it. If this court is correct in its previously expressed belief that Blane was bound by his earlier guaranty which survived the new loan documents, Charles and James have nothing to complain about. Blane

was just as bound as they were. If, however, Blane somehow escaped liability by virtue of the execution of the new note here being sued upon without a new guaranty from him, constituting an entirely separate transaction that, in legal effect, released Blane from his earlier guaranty of all Valley debt to SouthTrust and/or SBA, present and future, there is nothing in the record to suggest that SBA's early commitment that included a requirement that Blane become a guarantor, was intended to benefit Charles and James. It was clearly intended for the benefit of SBA and of SouthTrust. The general rule is that a person cannot sue as a third-party beneficiary of a contract unless the contracting parties intended to confer a benefit on him. In Alabama, this principle is elaborated by the rule of contract construction that a contracting party does not intend to confer a benefit on a third party unless the contracting party already owes some duty to that third party or has some pre-existing obligation to that third party. *Sloss-Sheffield Steel & Iron Co. v. Taylor*, 16 Ala. App. 241, 77 So. 79 (1917); *Shine v. Nash Abstract & Investment Co.*, 217 Ala. 498, 117 So. 47 (1928). This court can find no privity between SBA and/or SouthTrust, on the one hand, and Charles and James personally on the other, at the time the SBA loan commitment was issued to Valley, an entity entirely separate from its principals. There was simply no relationship between the parties that could have formed a basis for creating an obligation by SBA or SouthTrust to look out

10

for Charles and James to the extent of making them beneficiaries of an agreement between them, as lenders, and Valley, as borrower, that certain named guarantors would all be necessary to the transaction. And there is certainly no evidence of a direct written agreement of any kind between SBA and/or SouthTrust and Charles or James, much less one in which SBA and/or SouthTrust agreed not to close the follow-up loan without Blane's guaranty. The question of whether there was such a binding <u>oral</u> agreement is the next topic for consideration.

### Statute of Frauds

Charles and James are a bit difficult to pin down, but if they are contending that there was an oral promise by SBA and/or SouthTrust to obtain Blane's guaranty, such an agreement is void under Ala. Code § 8-9-2(3) and (7). Subparagraph 3 of the general statute of frauds requires that a party to be charged (in this case, SBA or SouthTrust) who promises to answer for the debt of others must do it in writing. An oral promise by SBA and/or SouthTrust to obtain Blane's guaranty is the functional equivalent of "guaranteeing the debt of another." Furthermore, under subparagraph 7 of the general statute of frauds, an oral agreement by SBA and/or SouthTrust to lend money in an amount more than $25,000, even if it did contain a promise to Charles or James to obtain a guarantee from Blane as a part of the commitment, would

11

not be enforceable because, according to Charles and James, it was an essential part of the loan agreement.

### Was SouthTrust Negligent or Guilty of Wanton Misconduct?

The tort of negligence in Alabama always arises out of some duty owed by the tortfeasor to the allegedly injured party. Assuming *arguendo* that an independent lawyer (LeMay was not an internal employee of SouthTrust) is an agent of the lender for whom he is closing a loan, that is, for the purpose of establishing potential *respondeat superior* tort liability, and not an independent contractor, a dubious assumption, SouthTrust owed no duty to Charles and/or to James to obtain Blane's signature or to tell Charles and/or James that the loan was being closed without Blane's personal guaranty in addition to his earlier blanket guaranty. Therefore, the lenders themselves could not have been negligent or wanton. Furthermore, LeMay bore all of the indicia of an independent contractor. If the lenders were negligent, directly or vicariously, Charles and James were contributorily negligent. There is no evidence of willfulness or intentional misconduct by either lender. If LeMay was negligent, such negligence may have violated a duty he owed his client, SouthTrust, but not to its customer, Valley, and certainly not to individual principals or agents of Valley.

## Conclusion

For the foregoing separate and several reasons, and for the reasons contained in the several briefs filed by the United States and SouthTrust, the United States and SouthTrust have much the better of the argument in this case, and both the motions for summary judgment by the United States and by SouthTrust will be granted by separate order.

DONE this __8th__ day of January, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE